UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM BRYANT,

                Petitioner,

        - against -

CHARLES GREINER,

                Respondent.

**OPINION & ORDER**

**02 Civ. 6121 (RMB) (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On December 17, 1998, petitioner, William Bryant ("Bryant"), was convicted of murder in the second degree and sentenced to twenty-five years to life in prison. Affidavit in Opposition, Frances Y. Wang, Assistant District Attorney, Bronx County ("Wang Aff.") ¶ 4. In the instant habeas petition under 28 U.S.C. § 2254, Bryant raises three claims: 1) the government failed to prove his guilt beyond a reasonable doubt; 2) the trial court failed to declare a mistrial and give limiting instructions when the government's witness yelled out "He's a Murderer," in open court; and 3) violation of his constitutional right to exercise his religion when the trial court refused to allow him to wear prayer beads during trial. Petition ("Pet.") at 5a-b. Before the Court is Bryant's renewed request to hold the petition in abeyance to allow him to exhaust additional claims in state court. For the reasons that follow, the request is **GRANTED**.

On November 7, 2005, Bryant asked the Court to hold his petition in abeyance in order to give him an opportunity to exhaust additional claims in the state courts or grant him permission to withdraw the petition and re-file once he exhausted all state remedies. The undersigned denied Bryant's request without prejudice to re-filing a similar request by December 15, 2005,

together with a showing 1) of good cause for failure to exhaust these claims, and 2) that the new claims are not plainly meritless, according to the requirements for a stay and abeyance under **Rhines v. Weber**, 125 S.Ct. 1528 (2005). **Bryant v. Greiner**, 2005 WL 3071476 (S.D.N.Y. Nov. 15, 2005).

In a letter dated December 4, 2005, Bryant explained that he has "been trying for several years to obtain D.N.A. Blood Laboratory Results from the state and [has] been stonewalled at every [j]uncture." The undersigned considered his original request for a stay, along with this additional submission, as a request for leave to amend his petition and add the new claims which he intends to exhaust, and granted Bryant's motion for leave to amend his petition, but ordered him to re-file a request for a stay and abeyance, providing more details about his DNA-related claim and his failure to exhaust that claim in state court. **Bryant v. Greiner**, 2005 WL 3455789 (S.D.N.Y. Dec. 14, 2005). Bryant responded promptly on January 3, 2006.

Essentially, Bryant contends he has been denied access to DNA evidence that would prove his innocence. During the police investigation of the murder at issue, investigators took swab samples of semen from the body of the victim, but the DNA in the semen "was never tested in a way that could specifically determine the source of the sperm or match the sperm to a particular person." Wang Aff., Exh. 1, at 14. The examiners also removed debris from underneath the decedent's fingernails. **Id**. None of the forensic evidence, as tested at the time, inculpated Bryant. **Id**. at 19. The tests that were done showed that "someone else was involved," but no DNA matching tests were performed. Respondent's Memorandum of Law ("Resp. Mem.") at 8. All other evidence against Bryant was circumstantial. Wang Aff., Exh. 1 at 19. None of the three witnesses for the prosecution saw the murder, but testified they had seen

Bryant either before or after the incident. **Id**. at 20, 22.

The Court ordered Bryant to file his amended petition, which he did, on March 2, 2006. Respondent submitted a response to the amended petition and Bryant's request for a stay on March 28, 2006. Although the Court grants the request for a stay in order to allow Bryant to exhaust his unexhausted claim in the state courts, Bryant should note the requirements he must follow as outlined below.

## II. DISCUSSION

**A.    Threshold Issues**

**1.    Bryant's Petition is Timely and the Amended Petition "Relates-Back"**

Pursuant to the AEDPA, a one-year statute of limitations applies to petitions for writs of habeas corpus by state prisoners. 28 U.S.C. § 2244(d). The Second Circuit has held that the limitations period "does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or--if the prisoner elects not to file a petition for certiorari--the time to seek direct review via certiorari has expired." **Williams v. Artuz**, 237 F.3d 147, 151 (2d Cir. 2001). The Appellate Division affirmed Bryant's conviction, **People v. Bryant**, 720 N.Y.S.2d 500 (2001), and the New York Court of Appeals denied Bryant's leave application on May 8, 2001. **People v. Bryant**, 96 N.Y.2d 826 (2001). His conviction became final ninety days thereafter, or August 6, 2001. Bryant filed his initial habeas petition on June 20, 2002, within the statute of limitations, and it is therefore timely. *See* 28 U.S.C. § 2244(d)(1).

Bryant first raised the issue of DNA evidence to the Court by letter in November of 2005, after the one-year statute of limitations had expired, and immediately after the respondent filed a

responsive pleading on November 2, 2005, making him subject to the "relate-back" requirement in FRCP 15(c). *See* **Mayle v. Felix**, 125 S. Ct. 2562 (2005). The Court now finds that Bryant's amended petition "relates-back" to his original petition. Bryant's original petition claims that his guilt was not proven beyond a reasonable doubt in violation of the due process clause. Pet. at 5a. His counsel's brief, on appeal, refers directly to the fact that, while DNA evidence existed, it did not inculpate Bryant, and was never tested adequately in order to identify the perpetrator. Wang Aff., Exh. 1 at 14, 19. The Supreme Court recently held that "[a]n amended habeas petition . . . does not relate back . . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." **Mayle**, 125 S. Ct. at 2566. Bryant's DNA-related claim in his amended petition may raise new grounds for relief, but the underlying facts are the same as those outlined in his original petition. The evidence he raises now may do no more than expand upon his earlier claim that his conviction was found in violation of the due process requirement of proof beyond a reasonable doubt. *Cf.* **Brown v. Donelly**, 258 F. Supp. 2d 178, 184 (E.D.N.Y. 2003) (finding amended pleadings did not "relate back" because no new evidence related to claims previously asserted was presented); **Holmes v. Patrick**, 2005 WL 196539, at *1 (E.D. Pa. Jan. 26, 2005) (holding that a new claim does not relate back, in contrast to an amendment which amplifies an existing claim) (***citing*** **United States v. Duffus**, 174 F.3d 333, 337 (3d Cir. 1999)).

    2.    **Exhaustion**

Under 28 U.S.C. § 2254(b), a federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A). The exhaustion doctrine requires a habeas petitioner challenging a state conviction on federal

4

grounds to have presented his or her claims to the state courts first.  *See* **Daye v. Attorney Gen. of New York**, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), *cert. denied,* 464 U.S. 1048 (1984). Bryant presented the three claims listed in his original petition to the state courts at all levels. Pet. at 6.  Those claims are exhausted and therefore appropriate for habeas review.  Bryant's DNA-related claim, however, has never been presented to the state courts, and therefore, Bryant's petition is a "mixed" petition, presenting both exhausted and unexhausted claims.

**B.    Requirements for Stay of a Mixed Petition**

The Supreme Court has indicated that district courts "must dismiss habeas petitions containing both unexhausted and exhausted claims." **Rose v. Lundy**, 455 U.S. 509, 522 (1982). However, in 1996, with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress significantly altered the proceedings for habeas corpus petitions, imposing a one-year statute of limitations and minimizing the grounds for second and successive petitions.  28 U.S.C. § 2244.  *See* **Zarvela v. Artuz**, 254 F.3d 374, 379 (2d Cir.), *cert. denied sub nom* **Fischer v. Zarvela**, 534 U.S. 1015 (2001).  In 2001, the Second Circuit recognized that many petitioners who had mistakenly filed "mixed petitions" would have the petition dismissed under **Lundy** and would lose all of their claims "because the one-year limitations period will likely expire during the time taken to initiate state court exhaustion and to return to federal court after exhaustion is completed."  **Zarvela**, 254 F.3d at 379.

Petitioners whose petitions have been pending for some time in federal court face the same predicament.  Though the one-year statute of limitations is tolled while state court post-conviction relief is pursued, 28 U.S.C. § 2244(d)(2), it is not tolled while a habeas petition is pending in federal court.  **Duncan v. Walker**, 533 U.S. 167 (2001).  If Bryant's petition were

withdrawn to allow him to exhaust his DNA-related claim, any new petition he filed would be barred.

To ameliorate this outcome, the Court of Appeals determined that the "only appropriate course . . . where an outright dismissal 'could jeopardize the timeliness of a collateral attack,'" would be to stay the proceedings on the exhausted claims until the petitioner either pursued exhaustion or dropped his unexhausted claims. **Zarvela**, 254 F.3d at 380 (*quoting* **Freeman v. Page**, 208 F.3d 572, 577 (7th Cir. 2000)). Addressing Congress's concerns, as expressed in the AEDPA reforms, that a petitioner might "take an undue amount of time to pursue state court remedies," the Court indicated that a stay of proceedings in such a case should be conditioned on allowing the petitioner a limited period to initiate exhaustion, and a similarly limited time to return to the district court once the claims had been exhausted. **Id**. at 380-81 (suggesting thirty-day intervals).

The Supreme Court recently ruled on the legality of a similar stay-and-abeyance procedure. **Rhines v. Weber**, 125 S.Ct. 1528, 1535-36 (2005). For the most part, the Court approved of the process. **Id**. at 1535. However, the Court outlined some additional requirements a petitioner must meet in order to be granted a stay of a habeas petition while exhausting state remedies for new claims. "(1) [A] stay should not be granted where the unexhausted claim is meritless; (2) 'stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court,' . . . (3) a 'mixed petition should not be stayed indefinitely,' and 'district courts should place reasonable time limits on a petitioner's trip to state court and back,' . . . and (4) 'if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.'"

**Ramchair v. Conway**, 2005 WL 2786975, at *17 (E.D.N.Y. Oct. 26, 2005) (*quoting* **Rhines**, 125 S.Ct. at 1535). Subsequent analyses of petitioners' requests for stays have focused primarily on two of these factors, requiring a determination that the unexhausted claim is not plainly meritless, and that the petitioner has shown good cause for failure to exhaust.

    1.    **Bryant's Unexhausted Claim is Not Plainly Meritless**

New York Criminal Procedure Law ("NYCPL") § 440.30(1-a) authorizes post-judgment applications for DNA testing. ***See, e.g.,* People v. Sterling**, 787 N.Y.S.2d 846, 849 (Monroe Cty. Ct. 2004). Bryant filed a motion to the Supreme Court, Bronx County, pursuant to this statute, in *pro se* papers dated April 7, 2006.[1] Other habeas petitioners have made claims appropriate for federal review regarding the use or misuse of DNA evidence at trial. ***See, e.g.,* Rasmussen v. Filion**, 2005 WL 318816, at *12-13 (W.D.N.Y. Feb. 9, 2005) (finding trial court should have permitted petitioner to elicit full results of DNA analysis, and proceeding to determine whether the error deprived him of a fundamentally fair trial). As noted above, any results of DNA testing will contribute to the review of one of the claims Bryant raised in his original petition: that the conviction was in violation of the due process requirement of proof beyond a reasonable doubt.

Respondent argues that, given the other evidence against him, Bryant's attempt to exonerate himself with DNA evidence will be unsuccessful. Resp. Mem. at 6. He points out that three witnesses testified for the prosecution, stating they had seen Bryant in the area before or

---

[1] Respondent recently informed the Court of Bryant's pending state motion, also reporting that Bryant's motion raises an ineffective assistance of counsel claim made pursuant to NYCPL § 440.10. Bryant has not raised the issue of ineffective assistance of counsel in his habeas petition and, therefore, that claim is not before the Court at this time.

after the murder, and one witness testified that she saw Bryant leave with the decedent immediately before the murder. **Id**. at 7. Another witness saw Bryant after the murder, "covered with blood." **Id**. at 8. Respondent also argues that the presence of semen from "someone else" is not necessarily exculpatory because the victim was a prostitute, and the semen sample may not be connected to the murder. **Id**. at 8. Finally, respondent argues that even if the scrapings under the victim's fingernails prove negative for Bryant's DNA, there is no evidence of a struggle between the victim and the perpetrator. **Id**. at 9-10.

New York courts will allow testing if there is a "reasonable probability" the verdict would have been more favorable to Bryant if the DNA tests were performed and were exculpatory. NYCPL §440.30(1-a). Respondent argues that this is a difficult standard to meet. However, the Second Circuit requires that the New York courts be given "the first chance to review their alleged errors so long as they have not authoritatively shown that no further relief is available.'" **Wilson v. Fogg**, 571 F.2d 91, 94-95 (2d Cir. 1978) (*quoting* **Bagley v. LaVallee**, 332 F.2d 890, 892 (2d Cir. 1964)). In upholding the stay-and-abeyance procedure, the Supreme Court emphasized that "the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." **Rhines**, 125 S. Ct. at 1533. The "plainly meritless" standard sets a low bar for precisely this reason. **Id**. at 1535. The Court finds that Bryant has established that his DNA-related claim is not plainly meritless.

### 2. Bryant has Shown Good Cause for Failing to Exhaust his DNA-related Claim

While the Supreme Court has indicated that "[a] petitioner's reasonable confusion about whether a state filing would be timely" could constitute good cause, **Pace v. DiGuglielmo**, 125 S. Ct. 1807, 1813-14 (2005), neither it nor any Circuit court has articulated a standard for "good

cause." Aside from a general consensus that an ineffective assistance of counsel claim itself is good cause, **Wallace v. Artus**, 2006 WL 738154, at *3-4 (S.D.N.Y. Mar. 23, 2006) (collecting cases), courts have disagreed on what considerations should be incorporated into a determination of good cause.

Some courts, primarily outside this circuit, have analogized the good cause analysis to that of the "cause" analysis required to overcome a procedural bar. *See, e.g.,* **Hernandez v. Sullivan**, 397 F. Supp. 2d 1205, 1206-07 (C.D. Cal. 2005); **Johnson v. Sullivan**, 2006 WL 37037, at *3 (C.D. Cal. Jan. 4, 2006); **Pierce v. Hurley**, 2006 WL 143717, at *8 (S.D. Ohio Jan.18, 2006); **Carter v. Friel**, 2006 WL 208872, at *3 (D. Utah Jan. 26, 2006). Other courts have found that "good cause" requires "a lesser showing," and that the Supreme Court likely intended a broader standard. **Fernandez v. Artuz**, 2006 WL 121943, at *6-7 (S.D.N.Y. Jan. 18, 2006) (*citing* **Rhines v. Weber**, 408 F. Supp. 2d 844, 849 (D. S.D. 2005) and **Jackson v. Roe**, 425 F.3d 654, 661-62 (9th Cir. 2005)). The Court agrees with the reasoning in **Fernandez** that a somewhat lesser showing of cause is needed under **Rhines**. This maximizes the opportunity for the state court to make a determination in the first instance.

Respondent argues that Bryant cannot demonstrate good cause because he did not raise the DNA testing issue until after respondent submitted a response to his habeas petition, several years after his conviction and direct appeal. Respondent suggests that Bryant was probably afforded copies of the laboratory results of the forensic testing that did take place prior to trial, and therefore had the opportunity to raise the issue earlier. *See* Resp. Mem. at 4. Respondent also assumes that neither Bryant nor his trial counsel made written or oral requests for additional DNA testing of the evidence during the trial. **Id**. Respondent, however, cannot definitively

establish either of these premises because he does not have a copy of the trial minutes. **Id**. at 5.

As a *pro se* petitioner, Bryant's submissions must be liberally construed. **Matias v. Artuz**, 8 Fed. Appx. 9, 11 (2d Cir. 2001). The Court finds that Bryant has provided some indication that his failure to exhaust is, at least in part, attributable to external factors. He claims that for "several years" he has asked for new tests to be performed. To demonstrate that he has been working to assert this claim, he includes recent letters from two state agencies sent to him in November 2005, and January 2006. The November letter denies his FOIA request for copies of the existing lab tests. The January letter indicates that his request for access to records in the state DNA Databank pursuant to state law is under review. In response to respondent's contention that he failed, at trial, to request further DNA testing of the forensic evidence, Bryant points out that the DNA tests he asks for now were not used by the state at the time of his prosecution. Memorandum of Law, February 24, 2006. The medical examiner testified, at the time, that a DNA matching test was not performed because the test had to be "better perfected." Resp. Mem. at 8. These facts are sufficient to show that some external factors contributed to Bryant's ability to exhaust this claim at an earlier juncture.

**Fernandez**, a Report and Recommendation by Magistrate Judge Andrew J. Peck, is the case most extensively discussing "good cause" in this district, and provides some additional factors for this analysis, particularly relevant here because Bryant's case is similar in some respects. 2006 WL 121943, at *6-7. In that case, the petitioner's sister had discovered, after trial, that some of the witnesses had not testified truthfully at trial. **Id**. at *3. With the assistance of an attorney, the family was able to obtain affidavits demonstrating the new evidence available, and file a NYCPL § 440 motion in state court, asking the district court to stay the pending habeas

10

petition in the meantime. **Id**. at *4.

Like the petitioner in **Fernandez**, Bryant filed his habeas petition long before **Rhines** changed the stay-and-abeyance procedure, which was "virtually automatic" in the Second Circuit at the time. **Id**. at *6. The fact that the law changed after the petitioner filed his habeas petition weighs towards a finding of good cause for failure to exhaust. *See* **id**. Furthermore, Bryant has been proceeding *pro se,* which probably hindered him in filing his state court motion.

Also like Fernandez, Bryant has not "engaged in intentionally dilatory litigation tactics." **Id**. (*citing* **Rhines**, 125 S.Ct. at 1535). Other courts have also found this a critical component of the stay-and-abeyance analysis; although it has been considered an independent requirement for a stay, *see* **Kimble v. Brown**, 2006 WL 488666, at *1 (S.D.N.Y. Feb. 28, 2006), rather than a factor to consider in a good cause determination. *See* **Fernandez**, 2006 WL 121943, at *6. Three concurring Justices in **Rhines** suggested that this factor alone should be the test for a stay. 125 S. Ct. at 1536 (Souter, J., concurring, joined by Ginsburg, J. and Breyer, J.). There is no evidence Bryant has filed his request for a stay merely to cause delay. Like the petitioner in **Fernandez**, **id**. at *7, his state court motion is currently pending before the state court. Furthermore, unlike Fernandez, Bryant does not have counsel. He has responded promptly to each of this Court's orders and followed the Court's directions. His submissions have focused on the one additional issue he asks the Court to address. While he has requested additional time in some instances, these requests have been predicated on his particular circumstances and his understanding of the steps needed for him to follow the Court's orders. Recently, Bryant reported that, due to a heart attack, he is confined to a hospital area. He indicates that a law library clerk was recently assigned to assist him with his claims.

The Supreme Court in **Rhines** re-emphasized the Court's earlier statements that "the total exhaustion requirement was not intended to 'unreasonably impair the prisoner's right to relief.'" 125 S. Ct. at 1535 (*citing* **Lundy**, 455 U.S. at 522).  The concurring Justices also expressed particular concern that *pro se* petitioners might be trapped by "strict and inflexible requirement[s]." **Id**. at 1536 (*quoting* **Lundy**, 455 U.S. at 520) (Stevens, J., concurring, joined by Ginsberg, J., and Breyer, J.); *see also* **id**. ("[t]he trickiness of some exhaustion determinations promises to infect issues of good cause when a court finds a failure to exhaust; *pro se* petitioners . . . do not come well trained to address such matters.") (Souter, J., concurring, joined by Ginsberg, J., and Breyer, J.).  Finally, post-**Rhines**, courts have cautioned that claims which suggest innocence should be "approach[ed] with special care." **Clancy v. Phillips**, 2005 WL 1560485, at *3 (S.D.N.Y. July 1, 2005); *see* **Fernandez**, 2006 WL 121943, at *7.  Given that Bryant has provided a minimal demonstration that external factors contributed to his failure to exhaust, that he is proceeding *pro se*, that there is no evidence of abusive litigation tactics, and that his DNA-related claim invokes a possibility of innocence, his request for a stay is **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, Bryant's petition is **STAYED** to allow him to exhaust his DNA-related claims.  Bryant must return to the district court **within thirty days** after the state courts have issued a decision on his recent motion.  If Bryant fails in complying with these conditions, the Court will vacate the stay *nunc pro tunc*.  *See* **Zarvela**, 254 F.3d at 381-82.  While respondent opposed Bryant's request for a stay, counsel has stated that the respondent will request the Department of Forensic Biology in the Office of Chief Medical Examiner to conduct

DNA tests on the evidence without an order from this Court. In the meantime, the Court has not received any of the trial court transcripts in Bryant's case. The Court finds transcripts to be particularly relevant to a case such as this, where the Court will be required to assess the amount of evidence at trial in light of Bryant's claim that the conviction was found in violation of the due process requirement of proof beyond a reasonable doubt. Respondent is therefore directed to forward copies of the transcripts to the Court.

**SO ORDERED this 15th day of June 2006**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**